UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO.: 7:09:CV-89-KKC

ALISHA BREWER                                                                                   PLAINTIFF

v.                                        **OPINION AND ORDER**

CORRECTIONS CORPORATION OF
AMERICA, et al.                                                                              DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on the Motion to Dismiss by Defendants Corrections Corporation of America ("CCA"), Jeff Little ("Little"), John D. Ferguson ("Ferguson") and Tony Grande ("Grande"). Rec. No. 7. Defendants' motion to dismiss is based on Plaintiff Alisha Brewer's ("Brewer's") failure to exhaust her administrative remedies prior to filing suit in federal court.[1] Brewer has responded to the motion, Defendants have replied and Brewer has been permitted to file a sur-reply. *See* Rec. No. 29, 32-34. This matter being fully briefed, it is now ripe for review. For the reasons set forth below, the Court will grant Defendants' motion to dismiss.

**I.   MOTION TO DISMISS**

Defendants argue that this action should be dismissed because Brewer has failed to exhaust her administrative remedies. Specifically, Defendants allege that the grievance process was never instituted by Brewer because she failed to file a written complaint as required by the

---

[1] The allegations giving rise to Brewer's claims against Defendants are adequately set forth in this Courts' decision on October 26, 2009 and do not need to be repeated for purposes of considering this motion. *See* Rec. No. 27.

Kentucky Corrections Policies and Procedures ("KCPP"). In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff, accepting all of its allegations as true. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998).

In the Prison Litigation Reform Act of 1995 ("the PLRA"), Congress amended 42 U.S.C. § 1997e to require prisoners to exhaust all available prison grievance procedures before filing suit in federal court. As amended, the statute provides that:

> No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Congress determined that this amendment was necessary to reduce the quantity of frivolous suits brought by prison inmates while simultaneously improving the quality of suits making it to court. *See Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). Exhaustion allows "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court," and improves the quality of the administrative record for reviewing courts. *Jones v. Bock*, 549 U.S. 199, 204, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). As a result, the Supreme Court has held "that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Porter*, 534 U.S. at 524.

At the time that Brewer's grievance arose, Otter Creek utilized the KCPP's grievance policy. This policy sets forth the administrative procedures that inmates such as Brewer must utilize prior to filing suit in federal court. Defendants argue that because Brewer failed to properly exhaust the KCPP's administrative procedures - by failing to submit a written grievance - her suit is not entitled to proceed.

2

**A. Administrative Procedures Were Available To Brewer.**

Brewer initially argues that she was not permitted to file a grievance because her rape by Officer Kevin Younce ("Officer Younce") was treated as a disciplinary matter and the KCPP does not permit filing grievances to challenge disciplinary proceedings. The Supreme Court has recognized that prisoners are not obligated to meet the exhaustion requirement where no administrative procedures are available to them. *See Jones v. Bock*, 549 U.S. at 217-18. Under the KCPP disciplinary procedures are clearly non-grievable issues. *See* KCPP 14.6(II)(C)(4). This is because disciplinary proceedings have their own appellate process that inmates must follow. However, this does not mean that Brewer could not have filed a grievance concerning the conditions leading to disciplinary proceedings being instituted.

Tellingly, Brewer has neither asserted that she attempted to file a written grievance nor was she informed that she could not do so. In addition, her contention that no administrative procedures were available is undermined by the fact that the KCPP contains special grievance procedures for addressing allegations of staff sexual misconduct. Under that policy, such a grievances do not "go through informal resolution or the Grievance Committee, but instead go directly to Step 3 after filing and...[are] reviewed by the Warden." KCPP 14.6(II)(J)(1)(b)(9). Thus, although Brewer was charged with inappropriate sexual behavior with another person stemming from the incident with Officer Younce and could not grieve that disciplinary outcome, she could have filed a grievance based on the rape itself.[2] As a result, there are no grounds in this

---

[2] Brewer's Complaint states that "Plaintiff, and other female prisoners, were and are routinely subjected to offensive sexual based language, sexual harassment, offensive touching and requests for sexual acts and degrading treatment by male staff at Otter Creek and other correction facilities within the Kentucky Department of Corrections." Rec. No. 1, Complaint ¶ 20.

3

case for excusing the exhaustion requirement based on the unavailability of administrative procedures.

**B. Brewer Did Not Properly Exhaust Available Administrative Procedures.**

In interpreting the PLRA, the Supreme Court has indicated that proper exhaustion is required. *Woodford v. Ngo*, 548 U.S. 81, 93, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006). Proper exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the court of its proceedings." *Id.* at 90-91. The KCPP explicitly provides that the first step in the grievance process requires preparation and submission of a written complaint which is filed within five days after an incident occurs. KCPP 14.6(J)(1)(a)(1), (2).

At the first step of the process after a complaint is filed, an informal resolution is attempted. However, if the inmate is not satisfied with the outcome of the informal resolution, she may make a written request that the Grievance Committee hold a hearing concerning the grievance. KCPP 14.6(J)(1)(b)(1),(8). The Grievance Committee Hearing is the second step of the administrative process. After the Grievance Committee has made a recommendation, the grievant may appeal to the Warden. KCPP 14.6(J)(2)(j). The appeal to the Warden is the third step in the process. KCPP 14.6(J)(3). If the grievant is not satisfied with the Warden's decision, she can appeal to the Commissioner at step four. KCPP 14.6(J)(4)(a)-(e). As discussed above, inmate complaints of sexual misconduct are handled differently and proceed directly to the warden for review after proper filing. KCPP 14.6(J)(1)(b)(9).

In opposition to Defendants' motion, Brewer asserts that she properly exhausted her claims by complaining verbally to Warden Little within twenty-four hours of being raped.

4

Brewer also claims that she later followed up with Warden Little and claims that he should have issued a written decision on her complaint within fifteen days.[3] However, the Court cannot find that Brewer properly exhausted available administrative procedures by verbally notifying Warden Little of her complaints.

Under the KCPP, Brewer was clearly required to begin the grievance process by submitting a complaint in writing. KCPP 14.6(J)(1)(a)(1). This never occurred. Furthermore, the Court cannot interpret the KCPP as permitting an inmate to bypass the grievance process by verbally lodging a grievance with a warden or other prison employee. As a result, it is apparent that Brewer has not properly exhausted her administrative remedies. Requiring the grievance process to commence through the filing of a written complaint also makes practical sense. Without the benefit of a written grievance on file, reviewing courts would be forced to work with incomplete administrative records and would have difficulty determining even such basic issues as whether a grievance was timely filed. Courts would also inevitably be called on to resolve disputes between inmates claiming to have verbally submitted grievances and prison officials/employees who may deny ever having received the grievances. Requiring proper exhaustion avoids these problems and many others.

**C. Exhaustion Is Mandatory And Brewer's Failure To Exhaust May Not Excused.**

Brewer next argues that even if she failed to properly exhaust her claims, all of the purposes of the PLRA were met by her actions. She claims that the PLRA's purposes were met when she discussed her rape with internal affairs, gave a recorded statement concerning the

---

[3] Where a grievance involving allegations of sexual misconduct has been properly filed and is directly submitted to the warden for review, he must "respond to the grievance within fifteen (15) working days of receipt of the grievance from the Grievance Coordinator." KCPP 14.6(J)(3)(b).

events, complained to Warden Little, provided the Disciplinary Board with a written statement and communicated the substance of her claims to other Otter Creek employees. However, as discussed previously, while Brewer may have shared the facts and circumstances of her rape with various employees and officials at Otter Creek, this did not constitute proper exhaustion.

In *Freeman v. Francis*, the Sixth Circuit indicated that "the exhaustion requirement in § 1997e(a) is directed at exhausting the prisoner's administrative remedies in the corrections system, and investigation by another agency does not satisfy the requirements of the statute." *Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999). Thus, Brewer's cooperation with an internal investigation cannot be found to substitute for utilizing the administrative procedures available for filing a grievance under the KCPP.

Brewer has not directed the Court's attention to a decision by any court excusing proper exhaustion based on satisfaction of the PLRA's principal purposes. The absence of such case law makes sense in light of the Supreme Court's emphasis on proper exhaustion which requires meeting an agency's deadlines and procedural rules. *Woodford v. Ngo*, 548 U.S. at 90-91. At its core, *Woodford* makes clear that prisoners cannot satisfy the PLRA's exhaustion requiring by filing an untimely or otherwise procedurally defective administrative grievance. *Id.* at 83. In this case, Brewer did not even make an attempt to file a grievance.

**D. The PLRA's Exhaustion Requirement Does Not Violate Brewer's 5th Amendment Rights.**

Brewer next argues that the Court should find the PLRA's exhaustion requirements unconstitutional as applied to her. On July 4, 2008, Brewer was read her Miranda Rights and informed that she could face criminal charges stemming from the incident between her and

Officer Younce. Brewer claims that once mirandized, she could not be compelled to discuss the facts of her rape- which she claims to be compelled to do by the exhaustion requirement. Brewer argues that this requirement puts her in the unenviable position of having to decide whether to incriminate herself or give up her right to sue.[4]

The application of the PLRA's exhaustion requirement does not violate Brewer's Miranda Rights or her right to remain silent under the Kentucky Constitution. Brewer misunderstands what Miranda requires. In *Miranda*, the Supreme Court explained that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). *Miranda* was concerned with custodial interrogation, "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 644.

In this case, Brewer was clearly subject to custodial interrogation and acknowledges being given her Miranda rights prior to giving statements to Otter Creek and the Kentucky State Police. However, the Court fails to see how requiring her to file a grievance while under investigation for inappropriate sexual behavior with another person[5] violates her rights to remain

---

[4] Brewer also argues that the exhaustion requirement violates her right to remain silent under Section 11 of the Kentucky Constitution which provides that:
> [i]n all criminal prosecutions the accused has the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor. He cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land.

Ky. Const. § 11.

[5] Brewer was eventually found guilty of the offense of pursuing/having a non-correctional relationship with a non-inmate.

silent and to be free from incriminating herself. The *Miranda* decision does not apply to the filing of a grievance because Brewer was not subject to the coercion of custodial interrogation while filling out the grievance form. Had she filed the grievance, she would have merely presented her version of the events for review throughout the prison's administrative process.

The Court also fails to see how filing a grievance alleging that Officer Younce raped her would incriminate Brewer. In statements to Otter Creek and the Kentucky State Police Brewer had already acknowledged that she and Officer Younce had engaged in sexual intercourse and that he had raped her. Finally, Brewer has not directed the Courts attention to decisions by any other federal or state court failing to apply the PLRA's exhaustion requirements because of Fifth Amendment concerns. As a result, this Court holds that the PLRA's exhaustion requirements as applied to Brewer do not violate her right to remain silent or right against self-incrimination under the Kentucky and United States Constitution.

**E. The time limits for exhaustion do not violate the Kentucky Constitution.**

Brewer's final argument is that the five day time limit for filing a grievance imposed by KCPP 14.6[6] violates the open court provisions of the Kentucky Constitution. *See* KCPP 14.6(J)(1)(a)(2). The gist of Brewer's argument is that by requiring such a short time period for filing a grievance - five business days after the incident - the KCPP deprives inmates access to the Courts in violation of the open court provisions of the Kentucky Constitution.

---

[6] The exhaustion requirements are also articulated in Kentucky Revised Statutes ("KRS") section 454.415. According to that section:
   (1) No action shall be brought by or on behalf of an inmate, with respect to a prison disciplinary proceeding or challenges to a sentence calculation or challenges to custody credit or to prison conditions, until administrative remedies as set forth in Department of Corrections policies and procedures are exhausted.
   (2) Administrative remedies shall be exhausted even if the remedy the inmate seeks is unavailable.
Ky. Rev. Stat. Ann. § 454.415 (LexisNexis 2009).

The relevant portions of the Kentucky Constitution that Brewer cites are sections 14, 54 and 241. Section 14 of the Kentucky Constitution provides that "[a]ll courts shall be open, and every person for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay." Ky. Const. § 14. Section 54 indicates that "[t]he General Assembly shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to person or property." Ky. Const. § 54. Finally, section 241 provides that:

> [w]henever the death of a person shall result from an injury inflicted by negligence or wrongful act, then, in every such case, damages may be recovered for such death, from the corporations and persons so causing the same. Until otherwise provided by law, the action to recover such damages shall in all cases be prosecuted by the personal representative of the deceased person. The General Assembly may provide how the recovery shall go and to whom belong; and until such provision is made, the same shall form part of the personal estate of the deceased person.

Ky. Const. § 241 (2010).

These sections of the Kentucky Constitution do not support a finding that the PLRA's exhaustion requirement when coupled with the KCPP's five day time limit for filing a grievance prevent inmates such as Brewer from having access to the courts. Many other inmates utilize the KCPP's administrative procedures including and are subject to the five day time limits and their suits eventually wind up in Court. Furthermore, Brewer's argument is not supported by any case law discussing the PLRA or exhaustion, whether from this jurisdiction or any other.

In considering Brewer's argument, the Court has also looked to other states' constitutions and the time limits that they impose for the filing of inmate grievances. This research indicates

that Kentucky's open courts provisions are not unique. For example, the Tennessee[7] and Ohio[8] state constitutions contain similar provisions. Despite the existence of these similar open court provisions, Tennessee[9] and Ohio[10] have similarly short time limits for the filing of inmate grievances. Michigan[11] also provides a short time period for filing inmate grievances.

The Court is certainly sensitive to the right of prison inmates, such as Brewer, to have access to the courts in seeking redress for their injuries. However, as indicated above, requiring them to follow applicable grievance procedures including time limits does not foreclose this access. As a result, the Court holds that the KCPP's five day time limit for filing a grievance does not violate the open court provisions of the Kentucky Constitution.[12] Consequently, the

---

[7] The Tennessee Constitution guarantees "[t]hat all courts shall be open; and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay. Suits may be brought against the State in such manner and in such courts as the Legislature may by law direct." Tenn. Const. Art. I, § 17.

[8] The Ohio Constitution guarantees that "[a]ll courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." Oh. Const. Art. I, § 16.

[9] Under the Tennessee Inmate Grievance Procedures, "[g]rievances must be filed...within seven calendar days of the occurrence or the most recent occurrences giving rise to the grievance, with the exception of Title VI complaints." TDOC Policy No. 501.01 Section VI(C)(1), *available at* www.state.tn.us/correction/pdf/501-01.pdf.

[10] Ohio's inmate grievance procedure is explained in Administrative Rule 5120-9-31 which provides that "[w]ithin fourteen calendar days of the sate of the event giving rise to the complaint, the inmate shall file an informal complaint to the direct supervisor of the staff member, or department most directly responsible for the particular subject matter of the complaint." Ohio Admin. Code 5120-9-31 (2009).

[11] In Michigan, "the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of the grievable issue...[i]f the issue is not resolved, the grievant may file a Step 1 grievance. The Step 1 grievance must be filed within 5 business days after the grievant attempted to resolve the issue with appropriate staff." Mich. Department of Corrections Policy No. 03.02-130(P).

[12] Brewer has also argued that the KCPP's time limits are particularly unjust in the context of rape, a crime whose victims often take lengthy periods of time to come to grips with what has happened to them. While this may be true, in this case Brewer has not alleged any facts indicating that she was unable to comply with the five day time limit because she was unable to come to grips with what happened to her. In fact, her opposition to Defendants' motion indicates that she gave statements to Otter Creek, Warden Little and the Kentucky State Police within days of the incident with Officer Younce. As a result, this argument is clearly without merit in Brewer's case.

Court will dismiss Brewer's complaint.

Normally, where a prison inmate has failed to exhaust her administrative remedies, dismissal under § 1997e is normally without prejudice. *See Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 994 (6th Cir. 2004). However, dismissing this complaint without prejudice would serve no useful purpose because Brewer's administrative remedies are no longer available because of her failure to file a grievance within the applicable time limits. Even if this Court were to dismiss Brewer's claims without prejudice, she would now be unable to utilize the administrative process because of the passage of time. *See, e.g.*, *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2003)(explaining that a dismissal for failure to exhaust should not be without prejudice "where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust."). Accordingly, Brewer's federal law claims will be dismissed with prejudice.

The Court notes that Kevin Younce is also a defendant in this action and that he is not among the defendants filing the instant motion to dismiss. There is no indication in the record whether Defendant Younce has been served with process by Brewer. However, the Court finds that the same reasons justifying granting the other defendants' motions to dismiss, also support a finding that the federal law claims against Defendant Younce should be dismissed.

## II.   PENDENT STATE LAW CLAIMS

Brewer has also asserted various state law claims against the Defendants. Because it has dismissed all of Brewer's federal law claims, the Court declines to exercise supplemental jurisdiction over these state law claims. *See* 28 U.S.C. § 1367(c)(3)(providing that district courts may decline to exercise supplemental jurisdiction when it has dismissed all claims over which it

has original jurisdiction). Because the federal claims against these Defendants will be dismissed for the reasons discussed above, the pendent state law claims against them will be dismissed as well.

### III. CONCLUSION

For the reasons stated above and the Court being sufficiently advised, it is hereby

**ORDERED** that:

(1) Defendants' **Motion to Dismiss** (Rec. No. 7) is **GRANTED;**

(2) Brewer's Complaint (Rec. No. 1) is **DISMISSED;** and

(3) Judgment shall be entered contemporaneously with this Opinion and Order in favor of Defendants.

Dated this 27th day of January, 2010.

Signed By:

*Karen K. Caldwell* KKC

**United States District Judge**