UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
at PIKEVILLE

CIVIL ACTION NO. 7:09-CV-089-KKC

ALISHA BREWER                                                           PLAINTIFF

v.                          **OPINION AND ORDER**

CORRECTIONS CORPORATION
OF AMERICA, et al.                                             DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on Plaintiff Alisha Brewer's ("Brewer's") Motions to Alter Judgment and to Certify Questions of Law to the Kentucky Supreme Court. Rec. 37, 39. Defendants Corrections Corporation of America, Jeff Little, John D. Ferguson and Tony Grande (hereinafter collectively "Defendants") by counsel have filed responses in opposition to both motions. Rec. 38, 40. Brewer has not replied and the time for doing so has elapsed. Accordingly, these motions are now ripe for decision. For the reasons set forth below, the Court will deny both of Brewer's motions.

**I.      MOTION TO ALTER AND AMEND JUDGMENT**

Brewer asks the Court to alter or amend its memorandum opinion and order of dismissal entered on January 27, 2010 pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure. The Court dismissed Brewer's claims against Defendants on exhaustion grounds.[1]

**A.      Rule 59 and Rule 60 Standard**

A motion under Rule 59(e) to alter or amend a judgment must be filed within twenty-

---

[1] The facts giving rise to Brewer's claims are set forth in the Court's previous Opinion granting the Defendant's motion to dismiss. *See* Rec. 35.

eight days after the entry of the judgment. Such motions may be granted to correct a clear error of law; to account for newly discovered evidence or an intervening change in the controlling law; or to otherwise prevent manifest injustice. *GenCorp*, *Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6t Cir. 1999). If the moving party is relying on newly discovered evidence, this evidence must have been previously unavailable. *Id.*

Motions to reconsider under Rule 60(b) seek extraordinary judicial relief and should only be granted upon a showing of exceptional circumstances. *McAlpin v. Lexington 76 Auto Truck Stop, Inc.*, 229 F.3d 491, 502-03 (6th Cir. 2000). The purpose for the rule "is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." *Charter Twp. Of Muskegon v. City of Muskegon*, 303 F.3d 755, 760 (6th Cir. 2002)(citation omitted). The rule allows a court to provide relief from a final judgment for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic of extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Parties seeking relief under Rule 60(b) have the burden of establishing the grounds for relief by clear and convincing evidence. *Info-Hold, Inc. v. Sound Merch., Inc.*, 538

2

F.3d 448, 454 (6th Cir. 2008).

B.     **Whether Brewer properly exhausted available administrative remedies.**

Brewer claims that the Court's opinion went into great detail about the filing of traditional grievances, but recognized that traditional grievance procedures are not available in the context of inmate allegations of sexual misconduct. Accordingly, counsel asserts that Brewer's only option was an appeal to Warden Little, who had informed her that he would "bury her" and not allow her to leave the segregation unit while she remained at Otter Creek Correctional Center ("OCC").

This argument misconstrues the Court's prior opinion and the clear requirements for asserting inmate grievances under the Kentucky Corrections Policies and Procedures ("KCPP"). The first step of the inmate grievance process -except for grievances pertaining to health care concerns - requires inmates to prepare and file a grievance in writing. *See* KCPP 14.6(II)(J)(1)(a)(1). Once a written grievance has been properly filed, the ordinary grievance procedure typically begins with an attempt at informal resolution. *See* KCPP 14.6(II)(J)(1)(b). However, written allegations of staff sexual misconduct are treated differently. Upon proper filing, no attempt at informal resolution is made and such grievances are submitted directly to the Warden for review. *See* KCPP 14.6(II)(J)(1)(b)(9).

The Court's prior opinion explained that because Brewer never filed a written grievance, she did not properly exhaust her administrative remedies and that the special procedures for grievances involving allegations of staff sexual misconduct were never triggered. Even assuming that Brewer attempted to orally raise the substance of her grievance with Warden Little and various other prison employees, the Supreme Court's decision in *Woodford v. Ngo*, 548 U.S. 81,

3

90-91, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006) indicates that prison inmates cannot satisfy exhaustion requirements by filing untimely or otherwise procedurally defective administrative grievances.

**C.  Whether the exhaustion requirement should be excused because there were no administrative procedures available to Brewer?**

In support of the argument that no administrative process was available to her, Brewer asserts that the OCC had an informal policy whereby inmate grievances were automatically vetoed if they involved matters which had resulted in an inmate receiving a disciplinary writeup. Brewer alleges that because she was disciplined after being raped, she was not permitted to file a grievance.

Brewer takes issue with the Court's finding that she neither asserted that she attempted to file a grievance nor was she informed that she could not. Brewer claims that the Court's finding overlooks a paragraph of her response to Defendants' motion to dismiss where it was asserted that:

> [p]resumably, the Defendants are trying to emphasize that Alisha understood the grievance procedures in place at OCC. The point the defendants are making is important and dramatically undermines their argument. Alisha did understand the procedure in place and knew from experience that disciplinary matters may not be grieved. It makes absolutely no sense to believe that Alisha would grieve access to telephones but not being raped. Alisha followed the rules. There were no grievance options available to her once the defendants treated her rape as a disciplinary matter.

Rec. 29 at 4-5. Brewer represents that she has continuously asserted that she was not permitted to file a grievance about a disciplinary matter and that her affidavit indicates that she "specifically testified that no "legal aid" visited her while she was in segregation and that she was not permitted to file a grievance without a legal aid." Rec. 37 at 4. Brewer's counsel contends

4

that because the Court overlooked this issue, relief is warranted under Rule 60(a).

However, the Court did not overlook this issue. In her initial affidavit, Brewer did not claim that she was not permitted to file a grievance for matters resulting in a disciplinary write up. *See* Rec. 29, Brewer Aff. at 1-3. Furthermore, Brewer did not affirmatively state that no one from legal aid came to see her while she was in segregation. In fact, she stated that she did not "remember a Legal Aid coming to see me at any point during the next 5 days." *Id.* at 2.

Brewer's counsel also represents that relief is warranted under Federal Rule of Civil Procedure 60(b) because a portion of Ms. Brewer's testimony was not included in the affidavit that was submitted in opposition to Defendants' motion to dismiss. It is argued that the information now included in the revised affidavit was simply omitted during transcription and constitutes excusable neglect. However, as noted above, Brewer's initial affidavit gave no indication that employees or officials of OCC had a policy whereby inmates could not grieve matters resulting in disciplinary action. Defendants' motion to dismiss was filed on July 27, 2009. The Court granted Brewer's motion for an extension of time to respond to Defendants' motion and gave her until October 27, 2009 to do so. When Brewer failed to timely submit a response, the Court on its own motion extended the deadline for a response until December 11, 2009. The Court also permitted Brewer to file a sur-reply in further opposition to the motion to dismiss. Despite having ample time and opportunity to do so, no attempt was made to supplement Brewer's affidavit until February 5, 2010, after the Court entered its order of dismissal. Based on the passage of time and the apparent importance of the allegedly omitted information, the Court finds that the alleged omission of Brewer's specific allegations about the OCC's informal policy of vetoing certain grievances was not excusable neglect and relief is not

5

appropriate under Rule 60(b).

Furthermore, the allegations contained in Brewer's revised affidavit are contradicted by affidavits that Defendants have submitted in opposition to Brewer's motion to alter or amend. For example, in her most recent affidavit, Brewer claims that she attempted to file a grievance against Officer Paul Patton for failing to transport her to court appearances in a timely fashion. Brewer claims that Officer Patton informed her that she could not file a grievance because he had written her up. However, according to an affidavit from Loretta Owens ("Owens"), the Manager of Human Resources at OCC since 1998, no employee named Paul Patton has worked at OCC since at least 1998. The only OCC employee named Patton during Brewer's period of incarceration at OCC was Rodney Kern Patton. However, Rodney Kern Patton has submitted an affidavit indicating that he knew Brewer but never transported her to any location or discussed the grievance process with her.

In her revised affidavit, Brewer also alleges that a grievance she attempted to file against Sergeant Linda Sims was vetoed because she received a disciplinary write-up. However, Owens' affidavit indicates that no employee named Linda Sims or Linda Simms has worked at OCC since 1998. In light of the evidence presented, the Court finds that relief is not warranted under Rule 60(a) or 60(b), because Brewer has not shown by clear and convincing evidence that she is entitled to relief. As discussed above, the Court also does not believe that its judgment dismissing Brewer's claims against Defendants constituted a clear error of law or that the judgment must be altered or amended to prevent manifest injustice.

**D. Whether the KCPP's time limits violate the open court provisions of the Kentucky Constitution.**

In the motion to alter/amend, Brewer renews her argument that the five day limit for filing a grievance imposed by KCPP 14.6 violates the Kentucky Constitution's open court provisions. Brewer asserts that the Court erred by analyzing the constitutions of Tennessee, Ohio, and Michigan along with the Kentucky Constitution while failing to address the cases cited in her pleadings. While the Court did not specifically discuss the cases cited in Brewer's pleadings, the Court noted that Brewer's argument that the KCPP's time limits for proper exhaustion violated the Kentucky Constitution was not supported by any case law.

The first case cited by Brewer is *Commonwealth v. Werner*, 280 S.W.2d 214 (1955) where the Kentucky Court of Appeals considered whether a state statute allowing for the deferral of trials for up to two years violated section 14[2] of the Kentucky Constitution. *Id.* at 215. The statute at issue dealt with state and federal highways, limited access highways, and turnpikes and permitted condemnors - after filing a motion with supporting affidavits - to delay jury trials regarding the condemnation for up to two years or until the road in question was completed. *Id.* at 214. In resolving the question presented, the Court held that:

> section 14, when construed in the light of section 26,[3] prohibits the legislature from invading the province of the judiciary and that the prohibition of section 14 applies to the legislative branch as well as to the judicial. So much of KRS 177.087 as provides for an unusual and unnatural delay is unconstitutional.

---

[2] Section 14 of the Kentucky Constitution provides that "[a]ll courts shall be open, and every person for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay." Ky. Const. § 14.

[3] Section 26 of the Kentucky Constitution provides that "[t]o guard against transgression of the high powers which we have delegated, We Declare that everything in this Bill of Rights is excepted out of the general powers of government, and shall forever remain inviolate; and all laws contrary thereto, or contrary to this Constitution, shall be void." Ky. Const. § 26.

*Id.* at 216.

In reviewing this decision, the Court finds that it does not support Brewer's argument that the KCPP's time limits violate the open court's provisions of the Kentucky Constitution. First, *Werner* addressed the constitutionality of a state statute allowing for a lengthy delay of trial in a matter properly brought before a court. In this case, the KCPP's five day time limit for filing a grievance does not significantly delay the ability of inmates such as Brewer to have justice administered. Rather, inmates are simply required to properly and timely exhaust their available administrative remedies before proceeding to federal court. Unlike *Werner*, once inmates do so, they are free to pursue their claims in federal or state court without any undue delay. While exhaustion requirements, such as those contained in the KCPP, are prerequisites for inmates to gain access to the courts, requiring such procedural rules to be followed does not deprive inmates of the Kentucky Constitution's guarantee that "all courts shall be open." Ky. Const. § 14. The Courts remain open to prison inmates, but "proper exhaustion" is required before they get there.

Brewer also relies on *Carney v. Moody*, 646 S.W.2d 40 (1982), where the Kentucky Supreme Court considered whether a statute protecting builders and others engaged in the design, planning, supervision, inspection, or construction of any improvement to real property from suit for damages, personal injury, or wrongful death more than five years after the substantial completion of the improvement violated sections 14 and 54[4] of the Kentucky Constitution. *Id.* at 40. *Moody* held that these statutes did not violate the aforementioned constitutional provisions and explained:

---

[4] Section 54 of the Kentucky Constitution provides that "[t]he General Assembly shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to person or property." Ky. Const. § 54.

8

> [t]hat the statutes limiting the period of a builder's exposure to liability for faulty construction may occasionally leave injured parties without a remedy, or without a solvent defendant, cannot justify the courts in taking corrective measures that more appropriately fall within the prerogative of the legislature.

*Id.* at 41. However, *Moody* was subsequently overruled by *Perkins v. Northeastern Log Homes*, 808 S.W.2d 809, 817-818 (1991), where the Kentucky Supreme Court indicated that these types of statutes of repose violated the open court provisions of the Kentucky Constitution.

Brewer has also cited *McCollum v. Sisters of Charity, Ky.*, 799 S.W.2d 15 (1990), where the Kentucky Supreme Court addressed whether a statute barring causes of action "against a physician, surgeon, dentist or hospital...for negligence or medical malpractice" not "commenced within five years from the date on which the alleged negligent act or omission" occurred, regardless of whether the cause of action had yet accrued violated the Kentucky Constitution's open courts provisions. *Id.* at 16. *McCollum* held that the statute violated sections 14, 54, and 241[5] of the Kentucky Constitution and explained that the statute effectively served:

> to extinguish a common-law cause of action by denying movant access to the courts. McCollum could not recover until a cause of action existed. Proof of damage is an essential part of his medical malpractice cause of action. Such proof was not available to him until 1985, when he first discovered his injury. Yet the legislature, through the five-year cap in KRS 413.140(2), would require McCollum to do the impossible–sue before he had any reason to know he should sue. This is antithetical to the purpose of the open courts provisions in the Kentucky Constitution.

---

[5] Section 241 of the Kentucky Constitution provides that:

Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then, in every such case, damages may be recovered for such death, from the corporations and persons so causing the same. Until otherwise provided by law, the action to recover such damages shall in all cases be prosecuted by the personal representative of the deceased person. The General Assembly may provide how the recovery shall go and to whom belong; and until such provision is made, the same shall form part of the personal estate of the deceased person.

Ky. Const. § 241. Section 241 is inapplicable in the instant case because recovery is not being sought for Brewer's death.

9

*Id.* at 19.

The Court does not find that *McCollum* supports Brewer's arguments that the KCPP's five day time limit for filing a grievance violates the Kentucky Constitution's open courts provisions. Unlike *McCollum*, in this case there is no indication that the five day time period elapsed before Brewer was aware that she had been raped and had a cause of action. In fact, such a conclusion would be contrary to Brewer's assertion that she properly exhausted all available administrative remedies within the required time limits by orally grieving to Warden Little and other prison employees. The Court is also not persuaded by the studies relied on by Brewer indicating that victims sometimes take years to come to grips with the fact that they have been raped. In this case, there is no evidence that Brewer did not know or could not come to grip with the fact that she had been raped. As discussed above, the allegations made by her in support of proper exhaustion require the opposite conclusion.

Brewer is correct that where a state law question is undecided, this Court "must make the best prediction, even in the absence of direct state precedent, of what the Kentucky Supreme Court would do if it were confronted with the question." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004). Having done so, the Court reaffirms its view that the KCPP's five day time limit for filing a grievance does not violate the open courts provisions of the Kentucky Constitution. While exhaustion requirements limit the access that inmates have to the courts, the courts continue to remain open for those inmates who properly and timely exhaust their administrative remedies.

In light of the Court's holding on this point, the Court will also deny Brewer's motion to certify questions of law related to the Kentucky Constitution's open courts provisions to the

Kentucky Supreme Court.[6] "Whether or not to utilize a certification procedure lies within the sound discretion of the district court." *Pennington v. State Farm Mut. Auto Ins. Co.*, 553 F.3d 447, 449-450 (6th Cir. 2009)(quoting *Transam. Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995)). Federal courts hesitate to "trouble our sister state courts every time an arguably unsettled question of state law comes across our desks." *Id.* Accordingly, when a federal court sees a "reasonably clear and principled course, we will seek to follow it ourselves." *Id.* (quoting *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007)). In this case, for the reasons set forth above, the Court believes that the applicable exhaustion requirements do not violate the open courts provisions of the Kentucky Constitution. As a result, the Court will deny the motion for certification.

## II. CONCLUSION

For the reasons set forth above, the Court **HEREBY ORDERS** as follows:

(1) Brewer's Motion to Alter Judgment, (Rec. 37), is **DENIED;** and

(2) Brewer's Motion to Certify Question of Law to the Kentucky Supreme Court (Rec. 39) is **DENIED.**

This 15th day of June, 2010.



Signed By:
*Karen K. Caldwell*
United States District Judge

---

[6] Brewer's motion requested that the following four questions be certified to the Kentucky Supreme Court:
(1) Whether the five day limit for filing a grievance imposed by KCPP 14.6 violates the open courts provisions of the Kentucky Constitution;
(2) Whether the five day time limit for filing a grievance imposed by KCPP 14.6, as applied to Alisha Brewer, violates the open court provisions of the Kentucky Constitution;
(3) Whether the exhaustion requirements of the Prison Litigation Reform Act violate the open court provisions of the Kentucky Constitution; and
(4) Whether the exhaustion requirements of the Prison Litigation Reform Act, as applied to Alisha Brewer, violate the open court provisions of the Kentucky Constitution.